IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BENYEHUDAH WHITFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:06-cv-00968-DGW |
| | ) | |
| RUSSELL GOINS, TIMOTHY LOVE, TIM MCALLISTER, and LEE RYKER | ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants, Russell Goins, Timothy Love, Tim McCallister, and Lee Ryker on October 18, 2013 (Doc. 87). For the reasons set forth below, the Motion is **GRANTED**.

### INTRODUCTION

The events surrounding Plaintiff's Complaint occurred while he was an inmate at the Lawrence Correctional Center ("Lawrence CC") from 2004-2007. Plaintiff is a practicing African Hebrew Israelite and his claims stem, for the most part, from Defendants', who were all employees of the Illinois Department of Corrections (IDOC), actions with respect to his religion. In particular, Plaintiff alleges that he was deprived of the ability to meaningfully practice his religion and subjected to sub-standard conditions of confinement in violation of the First, Eighth, and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc, *et seq*. Plaintiff's original Complaint was filed on November 21, 2006 and an Amended Complaint, setting forth 13 Counts against 23 entities in their individual and official capacities, was filed on July 31, 2007 (Doc. 13).

On February 27, 2008, Plaintiff's claims were screened pursuant to 28 U.S.C. § 1915A and various claims and parties were dismissed (Doc. 18). On November 2, 2011,[1] other claims and Defendants also were dismissed: the remaining claims included Counts 4, 6, 7, 8, 10, and 12 and Plaintiff was limited to individual capacity suits. On December 12, 2012, this Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to determine whether Plaintiff had exhausted his administrative remedies prior to filing suit. As a result of that hearing, and pursuant to an Order (Doc. 77), a number of Defendants were dismissed. As a result of all of these Orders, Plaintiff is proceeding on the following claims and against the following Defendants, in their individual capacity:

> COUNT 4: Against Defendants Love and Ryker for violating his right to freely exercise his religion under the First Amendment (denying him religious meals).
>
> COUNT 6: Against Defendants Love and Ryker for violating the Establishment Clause of the First Amendment (unequal allocation of funds for religious services and programs).
>
> COUNT 7: Against Defendants Love and Ryker for violating Plaintiff's Eighth Amendment rights (nutritionally inadequate meals).
>
> COUNT 8: Against Defendants Love and Ryker for violating Plaintiff's rights to due process and equal protection under the Fourteenth Amendment with regard to Counts 4, 6, and 7.
>
> COUNT 10: Against Defendants Goins and McCallister for violating his free exercise rights under the First Amendment by forcing him to receive a "T.B. shot" on the Sabbath.
>
> COUNT 12: Against Defendants Love; Ryker; Goins; and McCallister for having inadequate policies, for failure to train, and for failure to take corrective action when they had the opportunity to do so.

(*Id.* at 8).

---

[1] On September 30, 2008, judgment was entered in favor of Defendants and against Plaintiff (Doc. 41). Judgment was vacated, however, on June 29, 2011 (Doc. 48).

At the time of the allegations, Defendant Love was a Chaplain, Defendant Ryker was the Warden, Defendant Goins was a Lieutenant, and Defendant McAllister was a Sergeant. Defendants now have filed a Motion for Summary Judgment arguing, in part, that there is no evidence to support Plaintiff's claims (Docs. 87 and 88). Plaintiff filed a response on March 10, 2014 (Doc. 97). No reply has been filed.

## BACKGROUND

Plaintiff is an African Hebrew Israelite, a religion that requires, as a tenet of faith, that adherents comply with a vegan diet (Benyehudah Whitfield Declaration (hereinafter "Whitfield Dec.") ¶ 5; Doc. 97-1). While Plaintiff alleges that he was denied a vegan meal during his incarceration, the evidence reveals that he was in fact placed on a vegan diet while incarcerated at Lawrence CC (*Id*. ¶¶ 5-6). At his deposition, Plaintiff testified as follows:

> Q.  So to be clear, you are not saying that the vegan diet itself didn't comply with the dietary laws of the African Hebrew Israelites; is that correct?
>
> A.  That is correct.
>
> Q.  You are asserting that the diet failed to provide adequate nutrition?
>
> A.  That is correct.
>
> Q.  And you are not asserting that Chaplain Love denied you your vegan meals; is that correct?
>
> A.  That is correct.
>
> Q.  You are not asserting that Defendant Ryker denied you your vegan meals?
>
> A.  That is correct.
>
> (Whitfield Deposition (hereinafter "Whitfield Dep.") pp. 36-37).

Plaintiff does not dispute that the vegan diet provided by Lawrence Correctional Center complied with the tenets of his faith.

Plaintiff states, however, that the vegan diet caused various health concerns including "weight loss, frequent fatigue, and loss of energy" and that the food served was not nutritionally adequate (Whitfield Dec. ¶ 6). There is no evidence in the record that Plaintiff specifically sought medical care for the medical conditions that he complains of in this case. (Whitfield Dep. p. 33: "Q. Did you ever submit a sick call concerning these symptoms; A. No, I did not."). He "did not go to the infirmary and complaint about any medical concerns I believe were in consequent to the food that I was being served . . . because . . . I was had been constantly battling with IDOC Official and complaining to medical staff regarding matters related to the religious diet and was repeatedly told by medical staff that there was nothing they could do [sic]" (Whitfield Dec. ¶ 7). Plaintiff nonetheless complained to Chaplain Love and Warden Ryker about the adequacy of his diet:

> During the time I was at Lawrence Correctional Center, I complaint [sic] to Chaplain Love and Warden Ryker about the inadequacies of the religious meals I was being served and about the physical symptoms I was experiencing, but nothing changed.
>
> (Whitfield Dec. ¶ 17).

At his deposition,[2] Plaintiff specified the nature of his complaints to Chaplain Love and Warden Ryker. As to Warden Ryker, Plaintiff complained through grievances and one fleeting encounter. Thus, "the grievances that I filed were perhaps the only means by which I was able to communicate that issue to Defendant Ryker" (Whitfield Dep. p. 34). Warden Ryker, however, states that he did not review grievances filed by Plaintiff on May 11, 2005, June 5, 2005, June 19, 2005, or July 10, 2005 (Lee Ryker Aff. ¶ 8). Plaintiff has presented no evidence as to other specific grievances he filed. Plaintiff also states that during a Thanksgiving holiday, he passed Warden Ryker in the "chow hall," showed him his food tray, and stated "[t]his is what we are

---

[2] Plaintiff's deposition was taken on September 27, 2013 and his declaration was signed on March 6, 2014.

getting" (Whitfield Dep. p. 35). As to Chaplain Love, Plaintiff does not recall whether he complained or had a conversation with him regarding the nutritional adequacy of his diet (Whitfield Dep. p. 36).

There is no evidence in the record that either Chaplain Love or Warden Ryker were responsible or involved in decisions regarding the funding of religious programs (Timothy Love Aff. ¶ 12, Ryker Aff. ¶ 12). Neither Plaintiff's declaration nor his deposition shed any light on the manner in which either of these Defendants controlled the allocation of funds for religious programming and services. Plaintiff also points to no express policy that was in place that denied him the ability to practice his religion. Rather, Plaintiff believes that there was a practice in place that was used to discriminate against him and members of his faith:

> A. But the bottom line is my requests were not accommodated, and that implies that the officials involved were not properly trained. At some point or another they were not properly trained in something. (Whitfield Dep. p. 46).
>
> Q. So your assertion in Count 12 is that because they didn't do what you wanted, they were not properly trained, is that correct?
>
> A. That as well as the policy. Even though there may not have been written policy that okay, we want to discriminate against African Hebrew Israelites, or we are not going to give them the same accommodations that we give all the other faith groups, even though there may not have been a written policy on that, that was the practice.
>
> (Whitfield Dep. p. 46).

Plaintiff offers no testimony or other evidence of how these discriminatory practices developed, by whom they were enforced, or who, in particular, practiced these policies.

During his stay at Lawrence CC, various religious requests were not honored. Plaintiff testified that the only accommodation he was receiving was a vegan diet; however he was not receiving "whatever else [ ] we were supposed to be receiving" (Whitfield Dep. p. 39). When

questioned about what, in particular, Plaintiff was not receiving in order to practice his faith, Plaintiff stated that he was not provided meals after observing the Sabbath, he was not provided a Torah, he was not provided a faith group representative or leader, he was not allowed to pray/observe as a group, nor was he allowed to "observe all high holy days" (Whitfield Dep. pp. 38-41). While Plaintiff made requests for some or all of these accommodations from Chaplain Love, he does not recall complaining or making these requests of Warden Ryker (Whitfield Dep. p. 39).

The two remaining Defendants, Lieutenant Goins and Sergeant McCallister, were correctional officers whose only interaction with Plaintiff (as it relates to this lawsuit) occurred on Saturday, June 4, 2005. On that date, Plaintiff was scheduled for Tuberculosis testing which required the administration of a shot. Plaintiff explained to a nurse administering the shot that "it was against the tenants of my faith to take the shot," Saturday being a Sabbath day (Whitfield Dep. p. 43). Presumably, Plaintiff refused to take the shot and the nurse called Defendants Goins and McCallister. When they arrived, Plaintiff explained "the situation" to them and "they were insistent on me taking the shot and claiming that it was a law" (Whitfield Dep. p. 44; Whitfield Dec. ¶ 9). Plaintiff states that he was told that if he refused, he would be placed in segregation; he decided to take the shot "against my will" (Whitfield Dep. p. 44). In an affidavit, Lieutenant Goins states:

> Lawrence Correctional Center has a policy requiring inmates to submit to tuberculosis testing. The purpose is to prevent the spread of tuberculosis among the inmate population. If an inmate is [sic] refuses tuberculosis, the inmate is sent to segregation in order to isolate the inmate from the general population. Once an inmate consents to the tuberculosis test, the inmate is placed back into the general population.
>
> (Russell Goins Aff. ¶ 5).

Page **6** of **16**

The only evidence presented by the parties are Plaintiff's deposition, Plaintiff's declaration, and Affidavits by Defendants Love, Ryker, and Goins.  In his deposition, Plaintiff refers to various grievances that he wrote to prison officials during his stay at Lawrence CC regarding the issues that are currently before the Court.   None of these grievances, however, have been filed with the Court in connection with the pending Motion for Summary Judgment (*See* Doc. 96).

### STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).  The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).   *See also Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).   A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v.*

*Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id.* The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324.

As noted above, Plaintiff claims that Defendants, in their individual capacity, violated various constitutional rights during his incarceration at Lawrence CC. Each count will be taken in turn.

## DISCUSSION

**I.     Count 4: Against Defendants Love and Ryker for violating his right to freely exercise his religion under the First Amendment (denying him religious meals)**

It is well established that prisoners generally retain a First Amendment right to practice their religion, including observing religiously mandated dietary requirements. *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990). In this case, Plaintiff acknowledges that the vegan meal he received during the relevant time period was consistent with his religious beliefs. Plaintiff does not allege, nor is there any proof, that either Defendants Love or Ryker interfered with his

ability to acquire a vegan meal (or any other kind of meal) that is in keeping with his religious beliefs.   Therefore, Defendants are entitled to summary judgment on Count 4 as a matter of law.

**II.     Count 6: Against Defendants Love and Ryker for violating the Establishment Clause of the First Amendment (unequal allocation of funds for religious services and programs).**

Plaintiff claims that Defendants Love and Ryker contravened the First Amendment's Establishment Clause by allocating unequal funds for African Hebrew Israelite religious services and programs (Doc. 77, p. 8); (Whitfield Dep. p. 37).   Plaintiff merely speculates that the funding associated with accommodating African Hebrew Israelites at Lawrence CC was less than what is afforded other faith groups and offers no evidence in support of this conclusion other than vague assertions (Whitfield Dep., pp. 37-39).   *Visser v. Packer Eng. Ass'n,* 924 F.2d 655, 659 (7th Cir. 1991). ("[I]nferences and opinions must be grounded in observation or other first-hand personal experience," and cannot be based upon speculation.).   In any event, "[a] plaintiff doesn't state a cause of action under the First Amendment merely because a prison allocates a disproportionately smaller amount of its religious budget to certain sects or provides clergy for one religion and not another." *Maddox v. Love*, 655 F.3d 709, 718-19 (7th Cir. 2011); *see Young v. Lane*, 922 F.2d 370, 377-78 (7th Cir. 1991).   And, even if Plaintiff stated a valid claim with relevant evidence, it would still fail because there is no evidence that Defendants Love and Ryker were involved in the funding process for religious services at Lawrence CC (Love Aff. ¶ 12); (Ryker Aff. ¶ 12).   Therefore, Defendants are entitled to summary judgment as a matter of law on Plaintiff's unequal funds claim.

### III. Count 7: Against Defendants Love and Ryker for violating Plaintiff's Eighth Amendment rights (nutritionally inadequate meals).

In order for personal liability to attach in a § 1983 suit, Defendants must either "act[] or fail[] to act with a deliberate or reckless disregard of plaintiff's constitutional rights," or "caus[e] the constitutional deprivation [] at [their] direction or with [their] knowledge and consent." *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). Defendants Love and Ryker lack personal culpability regarding the adequacy of Plaintiff's meals because there is no evidence that they were either responsible for food selection or meal delivery. (Love Aff. ¶ 4); (Ryker Aff. ¶ 7). Therefore, because Defendants lacked personal involvement in the deprivation, they are entitled to judgment as a matter of law on this count.

Even if Defendants were personally involved in the deprivation, Plaintiff still cannot prevail on his claim. Prisons must provide inmates with adequate food and other basic human necessities. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (noting that prisons must provide prisoners with a nutritionally adequate diet). However, prisons are not required to provide prisoners with "healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). In order to succeed on this claim, Plaintiff must first show that the alleged deprivation is "sufficiently serious" in that "a prison official's act or omission result[ed] in the denial of . . . life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834) (internal quotations omitted). Second, the prison official needs to act with "deliberate indifference" to the alleged condition. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302 (1991) (internal quotations omitted)). In other words, the official must be aware of the

harm, could have taken measures to prevent the harm, but did not do so. *Id.*; *see Johnson v. Phelan*, 69 F.3d 144, 149 (7th Cir. 1995). It is insufficient to allege that the prison official acted negligently or should have known about the harm. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). Rather, the prisoner must show that the prison official received sufficient information from which an inference may be drawn, and that the prison official drew that inference. *Id.*; *see Proffitt v. Ridgway*, 279 F.3d 503, 506 (7th Cir. 2002).

Plaintiff declares that the vegan diet that he was given caused "significant weight loss, frequent fatigue, and loss of energy." Besides Plaintiff's self-diagnosis (i.e. that his diet was the cause of his ailments), there is no evidence in the record that Plaintiff suffered from any condition related to his diet. Plaintiff readily admits that he did not seek medical care for his ailments, ostensibly because he didn't trust that his condition would be treated. In a similar case, the Seventh Circuit doubted that a plaintiff's feelings of fatigue and low white-blood cell count on a vegan diet showed "objectively serious harm," and therefore would satisfy the prong of seriousness. *Mays*, 575 F.3d at 648. In this case, Plaintiff's attempt to draw a causal relationship between his ailments and his diet is sheer speculation.

Second, even if Plaintiff's evidence could show an objectively serious condition, it would still fail because there is no evidence that Defendants Love and Ryker acted with "deliberate indifference." *Townsend*, 522 F.3d at 773 (quoting *Wilson*, 501 U.S. at 302) (internal quotations omitted). There is no evidence in the record that Defendants were aware of the harm to Plaintiff; i.e. that they received sufficient information from which an inference may be drawn, and that they drew that inference. *Id.; See Pierson*, 391 F.3d at 902.

There is no evidence that Plaintiff either informed Chaplain Love about his medical condition or that the Chaplain was aware that the vegan diet at Lawrence CC was inadequate.

There is also no evidence that Warden Ryker had any actual or constructive notice because the evidence reveals that he did not read Plaintiff's grievances regarding the vegan diet (and indeed there is no evidence before the Court as to what those grievances may have said) and Plaintiff only made one fleeting, vague statement regarding the food that he was served. Therefore, there is no evidence that either of these Defendants understood his physical condition or the vegan diet's supposed effect on his health. Defendants are accordingly entitled to summary judgment on Count 7 as a matter of law.

**IV.** **Count 8: Against Defendants Love and Ryker for violating Plaintiff's rights to due process and equal protection under the Fourteenth Amendment with regard to Counts 4, 6, and 7.**

Plaintiff's claims in this suit relate to the practice of his religion and certain conditions of confinement. He complains that he was not allowed to practice his religion and that other persons within the jail, namely those of Jewish or Islamic faith, were allowed to practice their religion without interference. Plaintiff does not, however elaborate on his due process claim. Generally, claims which invoke the Fourteenth Amendment, while simultaneously raising complaints under the First and Eight Amendments, are subsumed by the latter amendments. "Rather than turning substantive due process into a catchall backup for any asserted constitutional injury, the Supreme Court has cautioned that a claim that finds its source in specific textual provisions of a particular amendment must be analyzed under the standards for that amendment only." *Little v. Illinois Dep't of Revenue*, 2002 WL 992623, *6 (N.D. Ill. 2002) *aff'd*, 369 F.3d 1007 (7th Cir. 2004) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994). In light of the foregoing analysis of Plaintiff's Count 4, 6, and 7, judgment must be granted in favor of Defendants on Plaintiff's due process claims.

As to Plaintiff's equal protection claims, there has been no showing that Defendants discriminated against Plaintiff, on account of his religion, with respect to religious meals or the allocation of funds. This conclusion is based on the above finding that neither Defendants Love nor Ryker interfered with receipt of religious meals nor is there evidence that they were responsible for the allocation of funding. This lack of personal involvement in decisions concerning meals and funds necessarily means that neither Defendant could have discriminated against Plaintiff on account of his religion. Defendants are accordingly entitled to judgment as a matter of law on Count 8.

## V. Count 10: Against Defendants Goins and McCallister for violating his free exercise rights under the First Amendment by Forcing him to receive a "T.B. shot" on the Sabbath

As indicated above, Lawrence CC elected to perform tuberculosis testing on a Saturday, a Sabbath day on which Plaintiff could not accept medical treatment/testing. The undisputed evidence reveals that he informed Defendants Goins and McCallister that subjecting himself to the shot would be contrary to his religion. The undisputed evidence also reveals that those inmates who refused to take the shot would be placed in segregation, not as a punitive measure, but to isolate them from the rest of the prison population until the shot could be administered. Instead of subjecting himself to segregation, Plaintiff submitted to taking the tuberculosis shot.

Substantial burdens on a prisoner's right to free exercise of his religion are acceptable if they are connected to "legitimate penological interests." *Tarpley v. Allen County., Ind.*, 312 F.3d 895, 898 (7th Cir. 2002); *Hunafa*, 907 F.2d at 47 ("As we explained in *Reed v. Faulkner,* 842 F.2d 960 (7th Cir.1988), a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison. But, conversely, a prison is entitled to enforce its regulations, even if they crimp a prisoner's religious style, if the regulations are reasonably related

to legitimate penological objectives." (additional citation and quotation marks omitted)). Legitimate penological interests may include guard and inmate security, rehabilitation, deterrence and safety. *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011); *see also Singer v. Raemisch*, 593 F.3d 529, 531 (7th Cir. 2010). In order to determine whether the regulation or policy that burdens a First Amendment right, in the prison context, is reasonably related to a legitimate penological interest, four factors are considered:

> (1) "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it."
>
> (2) "Whether there are alternative means of exercising the right that remain open to prison inmates."
>
> (3) "The impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."
>
> (4) "The absence of ready alternatives is evidence of the reasonableness of a prison regulation."
>
> *Turner v. Safley*, 482 U.S. 78, 90 (1987).

Defendant's legitimate penological interest in disease prevention substantially outweighs Plaintiff's strict adherence to the practice of his religion. As a policy, Lawrence CC seeks to prevent the transmission of tuberculosis, a communicable disease, amongst the prison population – mandating vaccinations is related to this legitimate interest (Goins Aff. ¶ 5). Plaintiff did not have an alternative practice, other than observing the Sabbath; however, the prison likewise had no other ready alternative but to inoculate an entire prison population in one go. Furthermore, Plaintiff had the opportunity to opt out of the tuberculosis screening on that particular day, by being temporarily placed in segregation, and then subjecting himself to a shot on a non-Sabbath day. Because the prison's legitimate interest in disease prevention outweighs the burden on

Plaintiff's religious observances, the Defendants are entitled to summary judgment on Count 10 as a matter of law.

### IV. Count 12: Against Defendants Love; Ryker, Goins, and McCallister for having inadequate policies, for failure to train, and for failure to take corrective action when they had the opportunity to do so.

In order to prevail on an unconstitutional custom or policy claim, the Plaintiff must show: "(1) an express policy that causes a constitutional deprivation; (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority." *Kelly v. Chambers*, No. 07CV1005, 2007 WL 4293633 at *9 (N.D. Ill. Dec. 6, 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002) (internal quotation marks omitted)); *see also Monell v. Department of Soc. Servs. of City of N.Y.C.*, 436 U.S. 658, 690 (1978).

A clear indication of inadequate policies, failure to train, and failure to take corrective action is noticeably absent from Plaintiff's Declaration and Deposition. First, Plaintiff does not point to an "express policy" which led to the alleged constitutional deprivation; Plaintiff's Declaration and Deposition do not state any express policy linked to a constitutional deprivation. Second, Plaintiff's Declaration and Deposition point to vague speculations based upon questionable inferences that African Hebrew Israelites were not given similar accommodations as other religious group or were singled-out for unequal treatment; no showing of a "widespread" or "well settled" practice exists (Whitfield Dep. p. 46); (Whitfield Dec. ¶ 19). As highlighted *supra*, "inferences and opinions must be grounded in observation or other first-hand personal experience," and cannot be based upon speculation. *Visser,* 924 F.2d at 659. Finally, Plaintiff does not bring forth evidence that the Defendants had any "final policy-making authority." *Kelly*, 2007 WL 4293633, at *9. This claim also must fail.

## VII. Remaining Claims

As indicated above, this Court originally found that Plaintiff only stated the specific Counts outlined, and disposed of, above. However, a careful review of Plaintiff's deposition reveals that his overarching grievance is that he was not allowed to practice his faith because he was deprived certain necessary religious items and/or ability to practice certain rituals. These included denial of: (1) a Torah; (2) weekly observance of the Sabbath; and (3) a chaplain to lead African Hebrew Israelite services (Whitfield Dep. p. 26-27; Whitfield Dec. ¶¶ 8, 12). Unfortunately for Plaintiff, however, his Complaint never was construed to include such a claim; rather, his Complaint was construed in 2008 to include the claims addressed above. And, Plaintiff has not moved to amend his complaint, a motion that if filed would likely be denied as untimely.

### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (Doc. 87) filed by Defendants on October 18, 2014 is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendants Goins, Love, McAllister, and Ryker, and against Plaintiff.

**IT IS SO ORDERED.**

**DATED: September 29, 2014**

                                              **DONALD G. WILKERSON**
                                              **United States Magistrate Judge**